HUGH ANDERSON ET AL. *v.* JAS. A. CARRICK ET AL.

[Abstract Kentucky Law Reporter, Vol. 3—388, as Anderson v. Carrich.]

**Vacation of Dirt Road.**

> Under the provisions of Gen. Stat. (1879), Ch. 110, § 13, requiring dirt roads within one mile of turnpikes to be closed, with certain exceptions, a dirt road will not be closed when at some points it is less and at others it is at a greater distance than one mile from a turnpike, leading to and being between the same points, where it is shown that the dirt road was established first, is nearer from point to point of intersection than the the turnpike, where its being closed would shut out some of the people living along the dirt road from any public way and where such dirt road is not used for the sole purpose of avoiding the payment of tolls on the turnpike.

APPEAL FROM SCOTT COURT OF COMMON PLEAS.

November 3, 1881.

OPINION BY JUDGE LEWIS:

This is an appeal from the judgment of the Scott Court of Common Pleas affirming a judgment of the Scott County Court dismissing an application to close the Lushing dirt road in that county.

The proceeding was commenced in the county court under Gen. Stat. (1879), Ch. 110, § 13, which reads as follows: "No lateral road shall be opened to and from the same places now connected by any turnpike, gravel or plank road, or which may be

hereafter so connected, so as to run within one mile of said road; and any such lateral road now in use, or which may hereafter be in use, shall, by order of the county court, be shut up and closed. But such lateral roads shall not be precluded from so running as near as a mile for the distance of one mile from any town or city."

The Georgetown & Oxford Turnpike, it appears, begins at a point upon the Georgetown & Paris Turnpike about one mile from Georgetown, and runs thence through Oxford to Lushing and Cynthiana. The dirt road sought to be closed begins at or near the same point, and running in the direction of Lushing intersects the turnpike at the distance of about four miles. From the one point of intersection to the other the dirt road is shorter than the turnpike by about one-half mile, the length of the latter being increased by a divergence made in order to run it through the village of Oxford.

The greatest distance the two roads are apart is about one mile and an eighth, and the average distance apart is from one-half to three-fifths of a mile. It is shown that persons residing upon the dirt road who have access over their own lands to the turnpike will derive advantage from closing the road in the saving of fencing, and that the tolls upon the turnpike which are now insufficient to keep it in good repair will be considerably increased. On the other hand, injury and inconvenience will result to other citizens of the county by closing it; for some of them have no other outlet; and others will be compelled to travel a greater distance to reach the county seat than they now have to travel.

But the statute being peremptory it is the duty of this court to construe it in such manner as to carry out the intention of the legislature. To construe the statute literally would lead to palpable injustice, contradiction and absurdity. For manifestly it was not the intention of the legislature that every dirt road running to and from the same places which may be connected by a turnpike, and running at some places within one mile of such turnpike, should be closed, irrespective of the injury thereby done to individuals and the public, and without regard to the distance it might diverge from the turnpike at other places. Nor did the legislature intend that in no case should a dirt road be closed that at some one point is a mile distant from the turnpike.

The object of the statute is to prevent the establishment of dirt roads that serve the purpose only of diverting travel from

turnpike roads, and enable persons to avoid the payment of tolls, without being necessary for the public or individual convenience. It was not the intention of the legislature to close dirt roads that are indispensable, and the only outlets from the homes of citizens to the county seats, churches and school-houses, or that are the nearest and most convenient ways for them to such places, merely to increase travel upon turnpike roads.

The dirt road sought in this place to be closed is nearer from point to point of intersection than is the turnpike. Some of those who now use the dirt road, if it were closed, would not use the turnpike at all to go to the county seat, and some of them would be shut out entirely from any public way and be at the mercy of those on whose lands they would have to travel to reach a public road.

The dirt road was established before the turnpike, is for some distance more than one mile from it, and is necessary to enable citizens to reach places where they have a right to go, and it is their public duty to go, and was not established nor is it used for the sole or principal purpose of avoiding the payment of tolls on the turnpike.

Wherefore the judgment of the court below is *affirmed.*

*Bradley & Bradley, Jas. E. Cantrill, for appellants.*

*W. S. Darnaby, for appellees.*